UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHARLES BRYANT, *et al.*,

    Plaintiffs,

v.

AMERICAN SEAFOODS COMPANY, LLC, *et al.*,

    Defendants.

CASE NO. C07-740RSM

ORDER DENYING DEFENDANT TRIDENT SEAFOODS' MOTION FOR ATTORNEY'S FEES RE INDEMNITY AGREEMENT

## **I. INTRODUCTION**

This matter comes before the Court on defendant Trident Seafoods' Motion For Attorney's Fees Re Indemnity Agreement. (Dkt. #126). On September 19, 2007, this Court dismissed plaintiffs' claims for lack of jurisdiction, including plaintiff Steven Kelley's claims against defendant Trident Seafoods. (Dkt. #118). Defendant now moves the Court to order plaintiff, Steven Kelley to compensate defendant for its reasonable attorneys' fees and costs related to this matter. Defendant argues that an indemnity agreement signed by plaintiff in a separate lawsuit precluded plaintiff from asserting any further claims against defendant. Plaintiff responds that the indemnity agreement did not apply to this lawsuit pursuant to the plain language of the agreement.

For the reasons mentioned below, the Court agrees with plaintiff, and DENIES

ORDER
PAGE - 1

defendant's Motion For Attorney's Fees Re Indemnity Agreement.

## II. DISCUSSION

### A. Background

On April 20, 2007, plaintiff Steven Kelley signed a "General Release and Indemnity Agreement" ("Indemnity Agreement") to settle a personal injury lawsuit with defendant Trident Seafoods.[1] Under the terms of the Indemnity Agreement, plaintiff agreed to release defendant from liability. Specifically, Section V of the Indemnity Agreement provides:

> **Indemnity Agreement:** I, STEVEN KELLEY, hereby agree to fully indemnify, defend and hold harmless [defendant] against any claim or cause of action, which in any way directly or indirectly arises from the OCCURRENCES that may be brought by any person or entity against [defendant]. This indemnity provision includes indemnity against any claim that may be brought by STEVEN KELLEY, his representatives, agents, or by any attorneys hired or thought to be hired by said persons and companies asserting any claims dependent on the OCCURRENCES as their basis. This Indemnity Agreement shall include without limitation any expense incurred by [defendant] for the investigation of any such claims hereinafter asserted.

(Dkt. #127 at 6).

Occurrences were defined under Section I of the Indemnity Agreement as:

> [T]he alleged incident which occurred on or about March 2005 in which [plaintiff] allegedly sustained an abdominal injury while engaging in repairs to the steering gear of the M/V INDEPENDENCE; the alleged accident which occurred on or about July 28, 2005, in which [plaintiff] allegedly sustained an eye injury while fishing aboard the ALASKA PACKER; and any other incident in which [plaintiff] alleges injuries or damages while in the employ of [defendant].

*Id.* at 4.

In addition, the Indemnity Agreement contained a provision specifically referencing the possibility of a separate lawsuit against defendant. Paragraph 2 of Section II provides:

> STEVEN KELLEY has notified RELEASEES of his intent to serve as the Representative of a potential class action lawsuit against [defendant]. KELLEY has not informed [defendant] of the subject matter, underlying facts, or claims involved in the referenced class action. The parties agree that, for purposes of determining whether STEVEN KELLEY may properly serve as a Class Representative in the referenced class action lawsuit, this Agreement shall be treated as though it were a final judgment on the merits of the LAWSUIT as of the date of this Agreement. *The parties agree that they reserve all rights and defenses with respect to the referenced*

---

[1] The separate lawsuit was litigated in this district court before the Honorable John C. Coughenour. *See* C05-1708JCC.

> *class action lawsuit* that they would posses as if this were a final judgment on the merits.

*Id.* at 5 (emphasis added).

Soon after the parties executed a settlement, plaintiff joined eight other plaintiffs in a separate lawsuit brought before this Court on May 14, 2007. The complaint alleged that plaintiffs, who were seamen that sustained injuries aboard vessels owned by several named defendants to this lawsuit, were personally obligated to pay deficiencies on their medical bills due to the fraudulent practices of defendants. This Court dismissed plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1), specifically finding that plaintiffs did not assert an injury-in-fact at the time the complaint was filed and therefore lacked standing to bring a claim. Defendant Trident Seafoods now brings the instant motion seeking reasonable attorneys' fees and costs based on the language of the Indemnity Agreement referenced above.

### B. The Language of the Indemnity Agreement Supports Plaintiff's Position

Courts interpret and resolve disputes concerning maritime contracts pursuant to federal law. *See Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 22-23, 125 S.Ct. 385 (2004) ("When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation"). When interpreting a maritime contract, a court should examine the contract as whole, and look first to the intent of the parties as expressed by the terms of the agreement. *See Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986). "Contract terms are to be given their ordinary meaning," and "[w]henever possible, the plain language of the contract should be considered first." *Starrag v. Maersk, Inc.*, 486 F. 3d 607, 616 (9th Cir. 2007) (quoting *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999)). It is well-established that all terms to a maritime contract should be interpreted without rendering any of them meaningless or superflous. *See Foster Wheeler Energy Corp. v. An Ning Jiang MV*, 383 F.3d 349, 354 (5th Cir. 2004); *Capozziello v. Brasileiro*, 443 F.2d 1155, 1159 (2d. Cir. 1971). Only if the language is ambiguous should a court examine extrinsic evidence and look beyond the

ORDER
PAGE - 3

1    written language of the contract. *See Fontenot*, 791 F.2d at 1214.

2    In the instant case, defendant argues that Section V of the Indemnity Agreement
3    prevents plaintiff from initiating any further lawsuits against defendant. Defendant argues
4    that indemnification provisions should be construed broadly, and urges the Court to examine
5    the facts underlying plaintiff's claims. However, the Court finds it unnecessary to analyze
6    the indemnification provision of Section V given the plain language of Section II. This
7    portion unambiguously states that plaintiff never intended to release his right to pursue a
8    class action proceeding. Defendant was clearly on notice of plaintiff's intention to "serve as
9    the Representative of a potential class action lawsuit against [defendant]." (Dkt. #127 at 5).
10   Section II goes on to state that "the parties agree that they reserve all rights and defenses
11   with respect to the referenced class action lawsuit[.]" *Id.* As a result, this Court will not
12   ignore the applicable language of Section II. Contract law requires this Court to interpret
13   contracts as a whole, and to only apply Section V would render Section II meaningless and
14   superfluous.

15   Furthermore, it is not dispositive that plaintiffs were never certified as a class. Under
16   Fed. R. Civ. P. 23(c), "[w]hen a person sues or is sued as a representative of a class, the
17   court must - at an early practicable time - determine by order whether to certify the action as
18   a class action." It was plaintiffs' intention to certify this lawsuit as a class action proceeding
19   (Dkt. #37 at 26-33), but the Court dismissed the case before it could reach that issue. As a
20   result, the fact that plaintiffs in this lawsuit were not certified as a class pursuant to Fed. R.
21   Civ. P. 23 does not preclude the applicability of Section II of the Indemnity Agreement.

## III. CONCLUSION

23   Having reviewed defendant's motion, plaintiff's response, defendant's reply, the
24   declarations and exhibits attached thereto, and the remainder of the record, the Court hereby
25   finds and Orders:

26   (1) Defendant Trident Seafoods' Motion For Attorney's Fees Re Indemnity
27   Agreement (Dkt. #126) is DENIED.

28   (2) The Clerk shall send a copy of this Order to all counsel of record.

ORDER
PAGE - 4

DATED this 2nd day of November, 2007.

_____
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE